UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Wanda Gayle Clark, | ) | Civil Action No.  5:22-cv-00460-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying

her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

pursuant to the Social Security Act ("the Act"). The issues before the court are whether the decision

is supported by substantial evidence and whether the Commissioner's decision contains an error

of law. For the reasons that follow, this court affirms the Commissioner's decision.

I.      Relevant Background

A.      Procedural History

Plaintiff filed applications for both DIB and SSI on September 30, 2020, alleging she

became unable to work on August 8, 2020.[1] Tr. 279-81. Plaintiff's applications were denied

initially on February 10, 2021, Tr. 110-11, and on reconsideration on April 19, 2021, Tr. 150-51.

Plaintiff requested  a hearing before an administrative law judge ("ALJ"). *See* Tr. 168-70. An

administrative hearing was held on August 24, 2021 before ALJ Flora Vinson. Tr. 35-71. The ALJ

---

[1] Although the applications are signed and dated August 31, 2020, Tr. 283-91, they were not filed
and received until September 30, 2020, Tr. 279.

denied Plaintiff's claim for both DIB and SSI in a decision dated September 28, 2021. Tr. 14-29. Plaintiff submitted a Request for Review of Hearing Decision/Order. Tr. 271-73. After granting Plaintiff an extension of time, Tr. 12-13, on December 17, 2021, the Appeals Council denied the request for review making the ALJ's September 28, 2021 decision the final decision of the Commissioner. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on February 14, 2022. ECF No. 1.

B.    Plaintiff's Background

Plaintiff was born in July 1971 and was 49 years old on her alleged onset date of August 8, 2020. Tr. 298. In her October 28, 2020 Disability Report-Adult form Plaintiff indicated that she completed the 12th grade, did not receive special education, and had not completed any type of specialized job training, trade or vocational school. Tr. 303. Plaintiff listed her past relevant work ("PRW") as grocery store deli clerk (Feb. 2005 – Aug. 2020). *Id.* Plaintiff indicated that she stopped working on August 8, 2020 because of her conditions which she listed as back problem, sciatica, anxiety disorder, and allergies. Tr. 302. Plaintiff listed her height as 5'5" and weight as 155 pounds. *Id.* She noted that her conditions caused her pain or other symptoms. *Id.*

Plaintiff completed a Disability Report-Appeal dated February 19, 2021 and indicated a changed in her medical conditions that occurred December 2020. Tr. 312. She noted that all of her conditions had worsened and she had developed a new condition of "shortness of breath." *Id.* Plaintiff indicated a change in her activities due to her conditions described as the inability to "do any cooking or cleaning." Tr. 314. In a second Disability Report-Appeal dated April 30, 2021, Plaintiff reported changes in her condition that occurred in April 2021. Tr. 327. She noted: "No change has been made I still take all of that medicine. Every day is a hassle for me. Hurt every day and I cant [sic] even stand up sometimes until the pain cease some." *Id.* Plaintiff indicated a new

medical condition and noted "Well the ambulance was called 2 times in this month due to high blood pressure and anxiety I could not catch my breath." Tr. 327. Plaintiff further noted: "My kids have to do my cooking and cleaning and at times my daughter bathes me [be]cause I cannot do by myself from the pain in my legs and back." Tr. 330.

C.    Administrative Proceedings

Plaintiff appeared with counsel for her administrative hearing in Columbia, South Carolina before ALJ Vinson on August 24, 2021. Tr. 35-71. Plaintiff testified, and VE Sandra Bruff also testified. *Id.* Due to the extraordinary circumstances presented by the Covid pandemic, the hearing was conducted telephonically. Tr. 37.

1.    Plaintiff's Testimony

In response to questions from the ALJ, Plaintiff confirmed her name, social security number, date of birth, and her current age of 50 years old. Tr. 40-41. Plaintiff testified that she lived in Mullins, South Carolina in a house with her 29-year-old son. Tr. 41. Plaintiff stated that she is 5'5" tall, weighs 151 pounds, and is ambidextrous. *Id.* Plaintiff testified that she never served in the military, she graduated from high school, and she was currently taking online classes to become a Medical Billing and Coding Specialist and she would complete her coursework in February of 2022. Tr. 42. Plaintiff testified that when she was in school, she was not in special education classes and she did not repeat any grades but she took a test and skipped first grade. *Id.* Plaintiff testified that she has never had a driver's license. Tr. 42-43. She stated that she leaves her house for doctors' appointments, her children usually do her grocery shopping, and she last went to the grocery store three weeks ago. Tr. 43. She stated that if she is shopping for an extended period of time, she will either ride in a motorized cart or lean on the cart and push it. *Id.* Plaintiff testified that she does not attend any social gatherings. *Id.* She stated that sometimes she is able to

dress herself without help, but if she has pain from sciatica, her son will help her. Tr. 43-44. She stated that she sometimes has problems bending over to put on her pants, and difficulty putting on a shirt because of pain in her lower back. Tr. 44. She stated that her son will help her get dressed every day when she is in pain and will help her shower, but because he is a male, he does not like to do it so her daughter will come and help her with the shower. *Id.* Plaintiff stated that if her daughter "can't make it then he has no other choice but to help me." Tr. 45. Plaintiff testified that she does not prepare meals, her children do, but she can make something simple like a sandwich or bowl of cereal. *Id.* Plaintiff stated that her children do the laundry, but she can sit and fold clothes. *Id.* She stated that her children do most of the household chores, but she tries to make her bed. *Id.* Plaintiff stated that she is only online to go to school, and although her daughter created a Facebook page for her, she does not use it. Tr. 46. Plaintiff stated she does not have a checking or savings account, she does not work in the yard, she does not do any activities for exercise or pleasure, and since August 2020 she has not traveled out of state or gone anywhere for pleasure. *Id.* When asked about any source of income since she stopped working Plaintiff testified that she receives a check for being on the honor roll and Dean's list, but she has no other income. *Id.*

Plaintiff testified that she could stay seated for 15-20 minutes before needing to stand and stretch, she could walk for ten minutes before needing to stop, and she could stand for about 15 minutes. Tr. 47-48. Plaintiff testified she could lift and carry "[n]othing but [her] pocketbook" and with her medication she might be able to pick up and pour a two-liter drink. Tr. 48. Plaintiff testified that she does not use any type of assistive device. *Id.* Plaintiff testified that she has not worked anywhere since August 2020 when she was working as an assistant manager in the deli of the Mullins Piggly Wiggly. Tr. 48-49. She stated that she would have to lift boxes that weighed "from 40 pounds on up." Tr. 49. She testified that every night at store closing she would have to

lift and clean the fryer that weighed between 50 and 75 pounds. Tr. 49-50. Plaintiff confirmed that she also worked at Food Lion for a short time in 2020 while she was working at Piggly Wiggly, and she worked for Bi-Lo from 2013 to 2018. Tr. 50. Plaintiff clarified that the grocery store changed owners and names over the years—"[f]rom Piggly Wiggly to Bi-Lo to Low Country Grocer"—but she was still working in the same location in the deli department. Tr. 51. Plaintiff testified that as assistant manager she was essentially a working manager and would just cover for other employees if they did not come in to work. She stated that she did not do any hiring or firing and she did not set the schedules. Tr. 52-53.

In response to questions from her attorney Plaintiff stated that her back pain "pretty much is the same" over the years, and although it "calmed down with the medication" she is unable to do chores or other tasks throughout the day. Tr. 53. Plaintiff testified that the right-sided sciatica pain goes down her right leg to her calf. Tr. 54. Plaintiff testified that the pain is constant and it "doesn't matter whether [she is] standing still or . . . lying down." *Id.* She testified that she has pain standing, walking, or sitting. Tr. 54-55. Plaintiff stated that when sitting in a chair she puts a pillow at her back and props her leg on a pillow on a footstool. Tr. 55. Plaintiff testified that during the day she spends about three hours seated doing her schoolwork. Tr. 57. She stated on days when she has "excruciating pain" she sits or lies down until it "calms down" and she takes medicine to "see if it eases up." *Id.* Plaintiff testified that she was having stomach and esophageal problems and problems with swallowing and was tested for GERD, and she is waiting to have a colonoscopy. Tr. 57-59. Plaintiff testified that she experiences anxiety daily and she is also going through menopause, but her anxiety got worse after her mother died. Tr. 60. Plaintiff stated that a normal anxiety attack lasts between 30 and 60 minutes, but if she is unable to get it under control she will call an ambulance. Tr. 61. Plaintiff restated her issues related sciatica causing back and leg pain,

and she noted that her doctor found "a little curve" in her back. Tr. 62. Plaintiff confirmed that John Odom is her "main doctor." *Id.*

In response to additional questioning from the ALJ Plaintiff testified that she started taking online classes in September 2020 and would graduate in February 2022. Tr. 62. Plaintiff stated that her advisor told her that with her certification or degree she would be able to work from home. Tr. 62-63. Plaintiff testified that she has gone to the hospital by ambulance seven or eight times because of panic attacks. Tr. 63. The ALJ pointed out that in a May 5 medical record, Dr. Odom noted that she was doing better, had had one panic attack, but the medications were helping. Tr. 64. Plaintiff noted that the doctor had changed her medications three times and she will return to him in September for bloodwork and the colonoscopy. *Id.* Plaintiff testified that she stopped working because she was having problems with her legs and they would not move her to another position in the store. Tr. 65. Plaintiff stated she could no longer do the work she was doing in the deli, and that she quit one day after working from 10:00 a.m. to closing at 9:00 p.m. while in "major pain." Tr. 65-66.

2. VE's Testimony

VE Bruff described Plaintiff's past work as: deli clerk, Dictionary of Occupational Titles ("DOT") number 316.684-014, light but performed by Plaintiff at the medium exertional level, SVP of 2, unskilled; and deli assistant manager, DOT number 189.167-018, light, SVP of 6, skilled. Tr. 67. The VE clarified that it was a composite job of assistant manager and clerk. *Id.* The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education and past work at the light exertional level with the following limitations:

> This individual could occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, could occasionally balance, stoop, kneel, crouch and crawl. This individual should not have to work in wet conditions and should not have to work around pulmonary irritants, such as concentrated amounts of dust, noxious odors,

fumes, mists, gasses, season[al] allergens or poorly ventilated work spaces. And finally this individual should not have to work in extreme cold or extreme heat.

Tr. 67-68. The VE testified that the hypothetical individual could perform Plaintiff's past work, both the deli clerk position and the composite position, as they are normally performed. Tr. 68. The VE also identified other jobs the hypothetical individual could perform including small products assembler, DOT number 706.684-022, light, unskilled, SVP of 2, with 91,000 in the national economy; ticket taker, DOT number 344.667-010, light, unskilled, SVP of 2, with 25,900 in the national economy; and storage rental clerk, DOT number 295.367-026, light, unskilled, SVP of 2, with 110,000 in the national economy. *Id.* The VE confirmed that her testimony was consistent with the DOT and its companion publication the SCO [Selected Characteristics of Occupations]. Tr. 69.

The ALJ modified the first hypothetical by limiting the individual to the sedentary level of exertion. Tr. 69. The VE confirmed that the individual could not perform Plaintiff's past work, but she identified the following examples of available jobs: food and beverage order clerk, DOT number 209.567-014, sedentary, unskilled, SVP of 2, with 50,100 in the national economy; final assembler, DOT number 713.67-018, sedentary, unskilled, SVP of 2, with 40,000 in the national economy; and eyeglass assembler, DOT number 713.684-038, sedentary, unskilled, SVP of 2, with 27,000 in the national economy. *Id.* The VE again confirmed her testimony was consistent with the DOT and SCO. *Id.*

The ALJ asked "[h]ow many days will employers tolerate an employee being absent on a regular basis in the competitive job market" and the VE responded "[n]o more than one day per month." Tr. 70. The ALJ asked "what percent of the work time will employers tolerate an employee being off-task on a regular basis" and the VE responded "[n]o more than 10 percent."

*Id.* The VE stated that she based her opinion regarding absences and time off-task on her "education, training and experience and observation of work performed[.]" *Id.*

Plaintiff's counsel had no questions for the VE, and the hearing adjourned. Tr. 70-71.

## II.     Discussion

### A.     The ALJ's Findings

In her September 28, 2021 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.
>
> 2.     The claimant has not engaged in substantial gainful activity since August 8, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.     The claimant has the following severe impairment: lumbar degenerative disc disease with sciatica (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. She can sit for six hours total in an eight-hour workday and stand and/or walk for six hours total in an eight-hour workday. Further, the claimant can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. Additionally, the claimant can occasionally balance, stoop, kneel, crouch, and crawl. She should not have to work in wet conditions or around pulmonary irritants, such as concentrated amounts of dust, noxious odors, fumes, mists, gases, seasonal allergens, or poorly ventilated workspaces. Finally, the claimant should not have to work in extreme cold or extreme heat.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on July 28, 1971 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.    Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 8, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 19-22, 27-28.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he/she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

claimant bears the burden of establishing the inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2.  The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . .."  42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

II.    Analysis

The issue Plaintiff presents for review is that the "ALJ's RFC determination is not supported by substantial evidence because the RFC lacked mental limitations which were supported by the record and because the physical RFC was crafted out of whole cloth." Pl.'s Br. 1, ECF No. 12. The Commissioner argues that substantial evidence supports the ALJ's decision finding Plaintiff was not disabled. Def.'s Br. 9, ECF No. 13.

SSR 96-8p provides that an ALJ must include a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts, when supporting the RFC assessment. In *Thomas v. Berryhill*, the Fourth Circuit outlined the proper RFC analysis, explaining that, "[t]he ALJ must consider all of claimant's 'physical and mental impairments, severe and otherwise, and determine on a function-by-function basis, how they affect [the

claimant's] ability to work.'" 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016).

A.    Mental RFC Assessment

Plaintiff argues "the ALJ's RFC determination is unsupported by substantial evidence as she failed to incorporate any limitation for Plaintiff's non-severe impairment of anxiety[.]" Pl.'s Br. 9.  The Commissioner argues that the "ALJ reasonably declined to adopt any mental RFC limitations to account for Plaintiff's non-severe impairment of anxiety" and "an ALJ's discussion at step two can be sufficient to explain the impact that non-severe limitations have on the RFC[.]" Def.'s Br. 11-12.

The ALJ found that Plaintiff's "medically determinable mental impairment of anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." Tr. 20. In assessing the severity of Plaintiff's mental impairments, the ALJ determined that Plaintiff had no limitation when it came to understanding, remembering and applying information; no limitation when it came to interacting with others; a mild limitation when it came to concentration, persistence and maintaining pace; and no limitation in adapting or managing oneself. Tr. 20-21. As support for this determination, the ALJ cited to Plaintiff's testimony, as well as notes within medical records, and Plaintiff's reports of her activities of daily living—including taking online classes. *Id.* In formulating her RFC assessment the ALJ considered Plaintiff's hearing testimony, her daily activities, the medical evidence of record, and the opinions of the State agency psychological consultants and of Plaintiff's treating physician, Dr. John N. Odom. Tr. 23-27.

1.   The Medical Opinions and the ALJ's Consideration of the Opinions

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or give special deference to treating source opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[3] Instead, ALJs consider medical opinions using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion, and the ALJ is not required to explain the consideration of the other three factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The new regulations further deem certain evidence "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). This includes statements on issues reserved to the

---

[3] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

14

Commissioner such as whether a claimant is disabled, is unable to work, or is incapable of doing past relevant work. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

The ALJ discusses the opinions of Plaintiff's treating physician, Dr. John N. Odom, and the opinions of non-examining State agency consultants Timothy Laskis, Ph.D. and Michael Neboschick, Ph.D. regarding Plaintiff's non-severe mental impairment.[4] Tr. 25-27.

a)    Dr. Odom's Opinions

On October 22, 2020, Dr. Odom completed a Mental Capacity Assessment of Plaintiff. Tr. 538-40. He noted Plaintiff's diagnoses as anxiety and stress. Tr. 538. He indicated Plaintiff had no limitations in understanding, remembering or applying information; no mental limitations in the area of concentration, persistence or pace except that physically she had marked limitations in the ability to work a full day without needing more than the allotted number or length of rest periods. Tr. 539. In the area of adapting or managing oneself Dr. Odom indicated Plaintiff had no limitations other than a moderate limitation in the ability to manage psychologically-based symptoms. *Id.* He indicated she had no limitations with interacting with others. Tr. 540.

On April 5, 2021, Dr. Odom completed a one-page questionnaire regarding his treatment of Plaintiff. Tr. 581. He indicated he last saw Plaintiff on February 9, 2021, her mental diagnosis is anxiety, and she was being treated with two medications that he indicated had not helped her condition. *Id.* Dr. Odom noted that psychiatric care had not been recommended. He indicated that Plaintiff was oriented in all spheres, her thought process was intact, her thought content was appropriate, her mood/affect was worried, and her attention/concentration and memory was adequate. *Id.* Dr. Odom indicated that Plaintiff had "adequate" ability to complete basic activities

---

[4] The ALJ also discusses the opinions of State agency medical consultants Susan Luberoff, M.D. and Irene Richardson, M.D. Tr. 25. However, because the Plaintiff focuses on the opinions related to her mental RFC, those opinions are not considered here.

of daily living; relate to others; and complete simple, routine tasks. He indicated Plaintiff had "poor" ability to complete complex tasks. *Id.* He noted she had difficulty with complex tasks and that increased her anxiety levels. *Id.* Dr. Odom provided no comments regarding work-related limitations as a result of Plaintiff's mental condition, and he indicated Plaintiff would be capable of managing her funds. *Id.*

Two months later, on June 16, 2021, Dr. Odom completed a two-page Physical Impairment Questionnaire.[5] Tr. 594-95. He noted Plaintiff's diagnoses as anxiety and sciatica with the following symptoms: significant anxiety, stress and panic attacks, back pain with right-sided sciatica. Tr. 594. He indicated that Plaintiff's symptoms associated with her impairments were "frequently" severe enough to interfere with the attention and concentration required to perform simple work-related tasks. *Id.*

In her decision the ALJ first addressed the April 2021 opinion of Dr. Odom and found it to be persuasive. Tr. 25. The ALJ found that the "opinion is supported by his own examination of the claimant, which showed worry and some occasional problems maintaining tasks, but intact thought processes, orientation, appropriate thought content, adequate memory, adequate attention, and adequate concentration." *Id.* (citing to Ex. 7F, pg. 10[6] and 12F, pg. 2). The ALJ noted that while the portion of Dr. Odom's opinion "noting that the claimant has a poor ability to complete tasks" was inconsistent with the medical evidence of record as a whole, the rest of Dr. Odom's opinion was consistent with the record. *Id.* The ALJ also found the opinion persuasive because of Dr. Odom's status as a doctor and expert in the field. *Id.*

---

[5] While this is a Physical Impairment Questionnaire, because it includes a mental diagnosis and accompanying symptoms, the court includes those mental-related responses here.

[6] Exhibit 7F/10 is an April 22, 2020 Progress Note regarding a six-month follow-up office visit with Dr. Odom. Tr. 525. Plaintiff reported no panic attacks, and Dr. Odom noted she had "[s]ome increased stressors but overall seems stable." *Id.*

Later in her decision the ALJ found that Dr. Odom's October 2020 and June 2021 opinions were not persuasive.[7] Tr. 26. The ALJ found these opinions were "not supported by his own examinations and opinions of the claimant[.]" *Id.* (citing to Dr. Odom's April 2021 opinion and a May 5, 2021 Progress Note). The ALJ also found that these opinions "are not consistent with medical records and examinations indicating symptoms of anxiety, fatigue, leg pain, right hip pain, and bilateral lower extremity pain, but alertness, pleasantness, full orientation, a normal gait, good range of motion, normal heel walking, normal toe walking, and negative straight leg raising. (Exhibits 1F, pg. 9, 5F, pgs. 6, 7, 8, & 13, 6F, pg. 8, and 9F, pgs. 6 & 8)." Tr. 26-27. The ALJ also noted that the opinions "are not persuasive as the issue of employability is reserved to the Commissioner." Tr. 27.

### b)     Dr. Laskis's Opinion

On February 9, 2021, State agency consultant Timothy Laskis, Ph.D. completed a Psychiatric Review Technique assessment regarding Plaintiff's anxiety disorder as part of her Disability Determination at the initial level. Tr. 83-85. Under the Paragraph B criteria Dr. Laskis determined Plaintiff had no limitation in her ability to understand, remember, or apply information; mild limitation in her ability to interact with others; mild limitation in her ability to concentrate, persist, or maintain pace; and no limitation in her ability to adapt or manage herself. Tr. 84.

The ALJ found this opinion persuasive as it "is supported by a thorough review and summary of the medical evidence available to him at the time of his opinion. Later evidence continues to support his opinion." Tr. 25.

### c)     Dr. Neboschick's Opinion

---

[7] Although the ALJ cites the exhibit number for the April 2021 opinion, her discussion of the opinions refers only the October 2020 and June 2021 opinions. Tr. 26. The undersigned believes the reference to Exhibit 12F to be a scrivener's error.

State agency consultant, Michael Neboschick, Ph.D., completed a Mental RFC Assessment on April 14, 2021 as part of Plaintiff's Disability Determination at the reconsideration level. Tr. 124-26. He noted that Plaintiff had no understanding and memory limitations, but she had sustained concentration and persistence limitations. Tr. 125. He indicated that Plaintiff was not significantly limited in the ability to carry out very short and simple instructions, but moderately limited in the ability to carry out detailed instructions and in the ability to maintain attention and concentration for extended periods. *Id.* He also noted that she was moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 126. He noted Plaintiff had no social interaction or adaptation limitations. *Id.* By way of additional explanation he noted:

1. Claimant can understand both simple and detailed instructions.
2. Claimant is able to attend to and perform simple, unskilled tasks for reasonable periods of time, but would have difficulty focusing on more complex tasks for extended periods of time.
3. Claimant can interact appropriately with co-workers, supervisors, and the general public.
4. Claimant is able to respond appropriately to requests for change and is able to protect self from common workplace safety hazards.

*Id.*

The ALJ found this opinion to be unpersuasive and provided the following explanation for her determination:

> While the undersigned finds that the opinion of the State agency psychological consultant is supported by a thorough review and summary of the medical evidence available to him at the time of his opinion, his opinion is inconsistent with the preponderance of the evidence, especially the lack of any specialized mental health treatment, the ability to successfully engage in online courses for medical coding and billing, and the medical records revealing symptoms of anxiety and fatigue, but alertness, pleasantness, orientation, and reports from the claimant that her anxiety is better and the medications are helping. (Exhibits 6F, pg. 8, 7F, pg. 14, 9F, pgs. 6 & 8, 11F, pg. 8, and 13F, pg. 3).

Tr. 26.

    2.    Discussion

Plaintiff takes issue with the ALJ's rejection of what she describes as "the only work-related limitation noted in the opinion regarding Plaintiff's *poor* ability to complete complex tasks." Pl.'s Br. 10 (emphasis in original). Plaintiff argues the ALJ failed to "properly conduct a supportability and consistency analysis of this limitation" pursuant to the regulations. *Id.* Citing to the April 15, 2021 opinion of State agency psychologist Dr. Neboschick, Plaintiff also argues that the ALJ "points to no evidence that would tend to discount the opinion that Plaintiff's ability to maintain concentration, persistence and pace is limited." *Id.* at 12. Plaintiff contends that had the ALJ incorporated mental limitations in her RFC assessment, the VE's testimony might have been different as her testimony was based on an incomplete hypothetical. *Id.* On Reply, citing to a case from the Western District of North Carolina, Plaintiff also argues that the ALJ erred by failing to discuss the impact on her RFC assessment of her finding that Plaintiff had mild limitation in the functional area of concentrating, persisting or maintaining pace.[8] Pl.'s Reply Br. 2-3, ECF No. 14 (citing *Ashcraft v. Colvin*, 2015 WL 9304561 (W.D.N.C. Dec. 21, 2015)).

First, it is inaccurate to describe the ALJ's consideration of Dr. Odom's opinion regarding her inability to complete complex tasks as a rejection of this opinion. The ALJ merely stated that

---

[8] While Plaintiff notes in her initial Brief that the ALJ found a mild limitation in her ability to concentrate, persist or maintain pace, Pl.'s Br. at 10, she does not make the argument that the ALJ failed to reconcile this limitation in her RFC assessment. The court considers it here, however a "party waives review of any issues not fully briefed and developed in its opening brief." *Finley v. Kijakazi*, No. 4:22-CV-01098-TER, 2023 WL 3089922, at *7 n.6 (D.S.C. Apr. 26, 2023) (citing *Canady v. Crestar Mortg. Corp.*, 109 F.3d 969, 973-74 (4th Cir. 1997); *United States v. Caldwell*, 7 F.4th 191, 212 n.16 (4th Cir. 2021) ("Any other arguments raised for the first time in his Reply Brief ... we deem waived.")).

19

she found that portion of his opinion to be inconsistent with the medical record as a whole but given the rest of the opinion's overall consistency with the record, she deemed the opinion to be persuasive. In addition to these findings regarding consistency the ALJ also found the opinion was supported by Dr. Odom's examinations of Plaintiff. Accordingly, the ALJ provided sufficient reasoning for her findings. Tr. 25. The court notes that Dr. Odom was provided a space on the questionnaire "to provide comments on [Plaintiff's] work-related limitations as a result of his/her mental condition" but Dr. Odom left this portion of the questionnaire blank. Tr. 581. Here, the ALJ found this opinion persuasive and addressed both the supportability and consistency of Dr. Odom's opinion as required by the regulations and cited to examples in the record.

Second, in finding Dr. Neboschick's opinion unpersuasive, contrary to Plaintiff's argument, the ALJ pointed to several examples from the record that were inconsistent with his opinion including Plaintiff's "ability to successfully engage in online courses for medical coding and billing[.]" Tr. 26. Under the new regulations for consideration of opinion evidence, the medical source's treating relationship with the claimant should be taken into consideration regarding the persuasiveness of the opinion. *See* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3). Here the ALJ gave due consideration to the opinion of a non-treating and non-examining physician.

The issue is whether the ALJ's decision is supported by substantial evidence, not whether a different conclusion could be supportable. The responsibility for weighing evidence falls on the Commissioner, not the reviewing court. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209 (4th Cir. 1999) (per curiam) (unpublished) (internal citation & quotation omitted. In

undertaking review of the ALJ's treatment of a claimant's medical sources, the court focuses its review on whether the ALJ's decision is supported by substantial evidence.

It is well-settled that an ALJ "'must build an accurate and logical bridge from the evidence to his conclusion.'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Here, it is clear from the ALJ's discussion that she considered the evidence of record that supported her findings regarding the opinions of Dr. Odom and Dr. Neboschick. The ALJ's analysis comports with the regulations as she properly considered the supportability and the consistency of the opinions and provided an adequate explanation for why she found Dr. Odom's opinion persuasive and Dr. Neboschick's opinion unpersuasive. Accordingly, the court finds the ALJ's evaluation of the opinion evidence is in keeping with the revised regulations and is supported by substantial evidence

Third, as to the ALJ's finding of Plaintiff's mild limitation in concentrating, persisting, and maintaining pace, the ALJ provided a discussion of this finding at Step Three. The ALJ noted:

> The claimant mentioned during her hearing that she does not drive a car, take out the trash, or perform outside chores. Nevertheless, she also indicated that she takes online classes, performs simple meals, washes dishes by hand, and goes grocery shopping. Moreover, on several mental status examinations during the relevant period, the claimant was alert and oriented times three with adequate concentration, intact thought processes, appropriate thought content, and adequate attention. (Exhibits 7F, pg. 14, 9F, pg. 8, and 12F, pg. 2). The undersigned finds that this is consistent with the record as a whole, which indicates that the claimant has mild limitations in concentrating, persisting, and maintaining pace.

Tr. 21. Plaintiff contends this is insufficient and the ALJ was required to provide further discussion in her RFC analysis. The court disagrees.

> There is no Fourth Circuit Court of Appeals case finding that "mild" limitations in CPP must be explained in the RFC; *Mascio* itself related to "moderate" limitations and "severe" mental impairments. *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Further, the Court notes that the weight of the authority from other district courts in this Circuit are contrary to the *Ashcraft* case. *See Martin v. Saul*, No. 9:18-CV-3172-JMC, 2020 WL 2813788, at *8 (D.S.C. Jan. 16, 2020)

> (collecting cases), *recommendation adopted*, 2020 WL 1329395 (D.S.C. Mar. 23, 2020)(many courts have held that *Mascio* is inapplicable where a plaintiff is found to have mild limitations in CPP).
>
> The regulations do not require specific articulation about how an ALJ is to have considered non-severe impairments in the RFC. 20 C.F.R. § 404.1545; *Britt v. Saul*, 860 Fed. Appx. 256, 262 (4th Cir. 2021)(Case law and regulations do not explicitly require a specific analysis on non-severe impairments in the RFC; the ALJ's opinion must simply reflect the ALJ considered the non-severe impairment.) A non-severe impairment by its nature did not cause more than a minimal limitation in ability to perform basic mental work activities. 20 C.F.R. § 404.1522(a).

*Finley v. Kijakazi*, 2023 WL 3089922, at *7 (internal footnotes omitted). The ALJ gave due consideration to Plaintiff's mild mental limitation and properly considered and discussed Plaintiff's testimony, her subjective allegations, her daily activities, the objective evidence, and opinions in formulating her RFC assessment. Tr. 23-27.

Finally, as to Plaintiff's argument that had a mental limitation been included in the ALJ's RFC assessment, her hypothetical to the VE and the VE's testimony might have been different, that argument also fails. It is a claimant's burden to present evidence of disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§ 404.1512(a), 416.912(a) (generally setting forth a claimant's burden to produce evidence of a disabling impairment and the Agency's right to deny a claim for lack of evidence); *Blalock v. Richardson,* 483 F.2d at 774.

> A vocational expert may be used at steps four and five to assist "in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). For a vocational expert's opinion to be "relevant or helpful," it must be responsive to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that the record supports. *Id*.

*Britt v. Saul*, 860 F. App'x 256, 263 (4th Cir. 2021). "The Fourth Circuit Court of Appeals has held that if a limitation 'does not affect [the] ability to work, . . . it [is] appropriate to exclude it

from the hypothetical tendered to the vocational expert.'" *Marion v. Comm'r, Soc. Sec. Admin.*, No. 2:16-CV-3285-CMC-MGB, 2018 WL 3120646, at *10 (D.S.C. Jan. 30, 2018), *report and recommendation adopted sub nom. Marion v. Berryhill*, No. 2:16-CV-3285-CMC, 2018 WL 1324503 (D.S.C. Mar. 15, 2018) (quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)).

At the administrative hearing the ALJ used a VE to opine on jobs Plaintiff could perform given her vocational profile. The ALJ did not include any mental limitations in her hypotheticals to the VE, but all of the jobs identified by the VE were unskilled with an SVP of 2. Tr. 68-69. The ALJ also asked the VE about the number of absences and amount of time off task that would be tolerated by an employer. Tr. 70. Although provided the opportunity, Plaintiff's attorney did not pose any questions to the VE or formulate any hypotheticals that included mental limitations. Tr. 70. *Coleman v. Colvin*, Civ. No. 0:14–2697–RBH, 2015 WL 5474674, at *19 (D.S.C. Sept. 16, 2015) (unpublished) ("[T]he court is unpersuaded by [the plaintiff's] attempts to now challenge the [VE's] testimony and the ALJ's findings and point out possible conflicts when none was raised during the proceeding."). "While questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record. Finally, the hypothetical question may omit non-severe impairments, but must include those that the ALJ finds to be severe." *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (internal citations omitted). In this case the ALJ determined Plaintiff's mental impairment to be non-severe, so there was no need to include a mental limitation in her hypothetical to the VE.

Even if the ALJ erred by not including in her RFC assessment a limitation regarding Plaintiff's inability to perform complex tasks, the error would be harmless based on the jobs identified at Step Five. The DOT job descriptions include a "definition trailer" indicating things such as the strength rating for the job, the SVP needed, and the General Education Development

("GED") (reasoning, mathematical, and language) required for satisfactory job performance. *DOT*, App. C, 1991 WL 688702. A GED reasoning level of two provides that the worker should be able to apply "commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.* Here, two of the jobs identified by the VE have a reasoning level of two[9]: small products assembler, DOT number 706.684-022, 1991 WL 679050; and ticket taker, DOT number 344.667-010, 1991 WL 672863. The Fourth Circuit has determined that there is no apparent conflict between GED reasoning level two jobs and a limitation to simple, routine tasks. *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019). Because the ALJ found Plaintiff could perform the jobs of small products assembler and ticket taker, which existed in significant numbers and did not require that Plaintiff complete complex tasks, any alleged error in not including this limitation in her RFC did not affect the Step Five findings and was, therefore, harmless.

Substantial evidence supports the ALJ's RFC assessment excluding any mental limitations.

B.      Physical RFC Assessment

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental,

---

[9] The third job identified by the VE, storage rental clerk, DOT number 295.367-026, is a GED reasoning level three. 1991 WL 672594. A level three provides that the worker should be able to apply "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702.

sensory, and other requirements of work. 20 C.F.R. §§ 404.1545(a)(3) and (4), 416.945(a)(3) and (4).

### 1.    The ALJ's RFC Assessment

In her decision, the ALJ set forth the applicable law to be considered when crafting her RFC assessment, including 20 C.F.R. §§ 404.1545, 416.945 and SSR 96-8p. Tr. 19. The ALJ determined that Plaintiff has the RFC to perform "less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." Tr. 22. The ALJ stated that in making this finding she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." *Id.* The ALJ noted that she also considered the medical opinions and prior administrative medical findings in accordance with the regulations. *Id.* The ALJ discussed Plaintiff's hearing testimony and her daily activities. Tr. 23. The ALJ determined that based on her evaluation of Plaintiff's subjective complaints, Plaintiff's allegations were inconsistent with the objective medical evidence and "the medical findings do not support the existence of limitations greater than the above residual functional capacity." Tr. 24. The ALJ stated that Plaintiff "suffers from a physical impairment, which limits her to the above-described residual functional capacity." *Id.* The ALJ then went on to discuss Plaintiff's medical records and examination results, noting that in 2020 Plaintiff complained of "right hip pain and bilateral lower extremity pain posteriorly" but indicated she was still able to work, shop, and drive. *Id.* The ALJ discussed the results from x-rays of Plaintiff's lumbar spine and subsequent physical examinations. *Id.* As for the opinion evidence, the ALJ determined the opinions of the medical consultants, who found Plaintiff capable of perform the full range of medium work, were unpersuasive. Tr. 25. The ALJ found that "their opinions are not consistent with medical records, physical examinations, or

the claimant's testimony demonstrating right hip pain, leg pain, bilateral lower extremity pain, diminished strength of the bilateral hips, and reports by the claimant that lifting 40 to 75 pounds caused her difficulty at work, causing her to ask if she could work as a cashier instead." Tr. 25-26 (citing to Exhibits 1F/9, 5F/6-8, and 9F/8). Exhibit 1F/9 is a report of a Multilevel Lower Extremity Evaluation with Exercise conducted by McLeod Regional Medical Center Vascular Lab on January 28, 2020 with normal results. Tr. 383.  Exhibit 5F/6-8 is a physical therapy Progress Note dated July 30, 2020 with normal results. Tr. 416-18. The report indicated:

> Subjective:  Patient presents today with complaints of pain in her right hip and BLEs posteriorly.  She reports she has had this pain for years, and speculates may have begun during MVA in 2010. She describes pain as burning sensation, primarily in posterior right hip and posterior BLEs down to her feet. She denies any N/T [numbness and tingling] associated. Patient reports she is able to work at deli, standing and some lifting, perform house work, grocery shopping, and driving, but with some pain. She  rates pain at worst as a 10/10 and at best a 0/10. She reports she participated in outpatient physical therapy at ProMotion in Florence, SC, for approximately 3 weeks, last visit the first of this month. She reports no changes since starting therapy there.
>
> Objective:
> Initial Observations: Gait unremarkable
> Sit-stands: BUE [bilateral upper extremities] assistance
> Stairs: reciprocal pattern, unremarkable
>
> Barriers to Learning:  none
> Palpation:  Moderate TTP [tenderness to palpation] R hip posterior. No TTP lumbar spine globally. No TTP RLE otherwise, and no TTP LLE globally.

Tr. 416-17. Exhibit 9F/8 is from a January 14, 2021 emergency room admission report for acid reflux and anxiety with exam results indicating normal gait. Tr. 548-50.

The ALJ found that Dr. Odom's opinions regarding Plaintiff's physical symptoms were inconsistent with the medical records and examinations that, in addition to indicating symptoms of pain, also showed "a normal gait, good range of motion, normal heel walking, normal toe

walking, and negative straight leg raising." Tr. 26-27 (citing to Exhibits 1F/9, 5F/6-8, 5F/13, 6F/8, and 9F/6 & 8).[10] The ALJ concluded:

> Despite evidence demonstrating medically determinable "severe" impairments, the evidence establishes that the claimant retains the capacity to function adequately to perform many basic activities associated with work.[11] The above residual functional capacity assessment is supported by the objective medical evidence contained in the record. It is also supported by the numerous activities of daily living reported by the claimant, including taking online classes for medical coding and billing, grocery shopping, washing dishes by hand, and preparing simple meals. Further, the objective medical evidence is not consistent with the claimant's subjective allegations. In sum, the claimant does experience some limitations, but not to a disabling extent.

Tr. 27.

### 2. Discussion

Plaintiff contends that the ALJ "fails to show what she relied upon to reach the conclusion that Plaintiff had the ability . . . to perform light work." Pl.'s Br. 13. Plaintiff argues that the ALJ "splits the difference" between the RFC assessments of the State agency medical consultants who opined she could perform medium level work and the opinions of Dr. Odom limiting her to sedentary work. *Id.* Plaintiff contends that because the ALJ rejected the physical medical opinions,

---

[10] The exhibits not previously discussed are Exhibits 5F/13 and 6F/8. Exhibit 5F/13 is an August 5, 2020 physical therapy Progress Note. Tr. 423. The clinical assessment indicated:

> Patient demonstrates remarkable gait with no difficulty getting on and off NuStep or on and off mat table. Patient able to perform stretches independently after verbal directions. Patient demonstrates good range of motion with no reports of pain or tightness. Patient able to maintain good hip/knee/foot alignment throughout all therex. Patient reports no pain throughout treatment. Patient reports no pain post treatment.

*Id.* Exhibit 6F/8 is a July 9, 2020 physical therapy Daily Note discussing Plaintiff's progress in physical therapy and noting improvement "from session to session." Tr. 458.

[11] The ALJ previously determined that "[b]asic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling[.]" Tr. 20.

"she was obligated to develop the record and order a consultative examination in order to obtain guidance from a medical professional regarding Plaintiff's limitations." *Id.* at 15.

The Commissioner argues that "[f]ar from merely 'splitting the difference,' a review of the record confirms that the ALJ conducted a thorough analysis of the evidence to support the RFC finding, guided by [the] two-step process set forth in the Commissioner's regulations." Def.'s Br. 15-16. The Commissioner further contends that because RFC findings are administrative assessments made by an ALJ, the ALJ may consider statements from medical sources but is not required to base her RFC assessment on a medical opinion. *Id.* at 19.

Pursuant to SSR 96-8p, an ALJ's RFC assessment must evaluate the claimant's ability to perform the physical functions listed in 20 C.F.R. §§ 404.1545(b), 416.945(b)—"sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching) [that] may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. §§ 404.1545(b), 416.945(b); SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). As a result, an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. Here, the ALJ explained her RFC assessment citing both to specific medical facts and to non-medical evidence. "There is no requirement by an ALJ to translate opinion language into the RFC determination, as the RFC is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record. An RFC is an administrative finding of fact." *Cordell v. Kijakazi*, No. 4:21-CV-01224-TER, 2022 WL 1617486, at *9 (D.S.C. May 23, 2022) (internal quotations and citations omitted). Plaintiff cited to *Gibson v. Colvin*, No. 7:13-CV-62-BO, 2014 WL 4415969, at *2 (E.D.N.C. Sept. 8, 2014), to

support her argument that the ALJ "splits the difference between competing RFC's" without explanation. However, unlike the ALJ in *Gibson*, here the ALJ did provide an explanation, supported by citations to the record, for why she found the physician opinions unpersuasive as to Plaintiff's physical RFC. Tr. 25-27.

As to Plaintiff's allegation that the ALJ was required to "order a consultative examination in order to obtain guidance from a medical professional regarding Plaintiff's limitations[,]" the court disagrees.

> Social Security regulations provide that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) ). In doing so, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000). With respect to physical RFC, "[e]xertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Importantly, "an ALJ has discretion in deciding whether to order a consultative examination." *Sheppard v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-13-1239, 2014 WL 2154169, at *2 (D. Md. May 20, 2014) (citing 20 C.F.R. § 416.919a(a); *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003)). Such an examination "is only needed when the evidentiary record before the ALJ is inadequate." *Id.* (citing *France v. Apfel*, 87 F. Supp. 2d 484, 489-90 (D. Md. 2000) ).

*Layson v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-17-1183, 2018 WL 2118644, at *1 (D. Md. Feb. 21, 2018). Here, the ALJ had adequate evidence in the record to make her factual findings regarding Plaintiff's RFC. "When the record contains sufficient evidence to determine whether a claimant is disabled under the Act, the fact that the ALJ discredited the available medical-source opinions 'does not mean that [the agency] had a duty to seek additional information. . . .'" *Smallwood v. Colvin*, No. 4:13-CV-00069, 2015 WL 72115, at *3 (W.D. Va. Jan. 6, 2015) (quoting *Coleman v. Astrue,* No. 2:06cv66, 2007 WL 3088074, at *7 (W.D. Va. Oct. 22, 2007)); *see also*

*Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (holding that the "ALJ was not required to obtain an expert medical opinion as to [the plaintiff's] RFC. The ALJ properly based his RFC finding on [the plaintiff's] subjective complaints, the objective medical evidence, and the opinions of treating, examining, and nonexamining physicians.").

Review of the ALJ's decision as a whole reflects that she sufficiently explained Plaintiff's RFC and Plaintiff has failed to demonstrate that the ALJ's RFC is unsupported by substantial evidence or controlled by an error of law.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court affirms the Commissioner's decision.

IT IS SO ORDERED.

May 30, 2023                                Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge